Povey *v.* The Midvale Company, Appellant.

Argued March 22, 1954. Before HIRT, ROSS, GUN-THER, WRIGHT, WOODSIDE and ERVIN, JJ.

*Miles W. Kirkpatrick,* with him *Morgan, Lewis & Bockius,* for appellant.

*Edward Davis,* for appellee.

OPINION BY HIRT, J., May 27, 1954:

Plaintiff had been in the employ of the defendant company, a manufacturer of steel products, for many years. He was classified as a Molder-Coremaker and was paid at the rates applicable to that classification, as fixed from time to time by a series of collective bargaining agreements entered into by the defendant with Federal Labor Union Number 18887. Some time prior to February 22, 1951, plaintiff was advised that throughout the period of his employment he had been doing the work of a Leading Molder-Coremaker[1] and was entitled to wages at the higher rates established by the collective bargaining agreement for workmen in that classification. Accordingly he then demanded

---

[1] A Leading Molder according to the testimony was one charged with the responsibility of assigning and supervising the work to be performed by the molders under him and of keeping records of the quantity and pattern numbers of the castings produced.

that the defendant pay him the difference between the total wages actually received by him and the total wages computed at the higher rates of a Leading Molder for the period, not barred by the Statute of Limitations, of six years immediately preceding the above date of demand. The defendant disclaimed liability whereupon plaintiff ultimately brought an action in assumpsit to recover the additional sums which he alleged were due him for that period. When its preliminary objections to the plaintiff's complaint were dismissed, the defendant petitioned the lower court to stay the assumpsit action pending arbitration of the disputed claim in accordance with the terms of the written collective bargaining agreements entered into with defendant by the above union on behalf of plaintiff and other employes of defendant.

The defendant's plant was a union shop and the above Federal Labor Union, a local affiliate of the American Federation of Labor, was "the sole bargaining agent for all hourly production and maintenance employees of the company . . ." Throughout the period of plaintiff's employment a series of collective bargaining agreements fixed the hourly rates of pay applicable to the various classes of production and maintenance employes. The agreements by their avowed terms were designed "to promote and maintain harmonious industrial and economic relationships between the Company and its employees . . ." and they comprehensively defined the reciprocal rights and duties of the employer and the employes for whom the union acted in all phases of their relationships.

Claimant, throughout the period, was a member of the above union. Here, just as in unemployment compensation cases, union members are bound by the action of the union as their agent in negotiating collec-

tive bargaining agreements with their employer. *Curcio Unemployment Compensation Case,* 165 Pa. Superior Ct. 385, 391, 68 A. 2d 393; *Byerly Unemployment Compensation Case,* 171 Pa. Superior Ct. 303, 311, 90 A. 2d 322. As an incident of membership in a union an employe designates his union as his representative to act for him as his agent in collective bargaining with the employer and in all matters pertaining to his employment. *Prentice Unemployment Compensation Case,* 161 Pa. Superior Ct. 630, 637, 56 A. 2d 295; *Burns Unemployment Compensation Case,* 164 Pa. Superior Ct. 470, 65 A. 2d 445; *Lavely Unemployment Compensation Case,* 166 Pa. Superior Ct. 481, 485, 72 A. 2d 300.

Plaintiff's disputed claim for additional compensation as wages raised a question "relating to individual rates of pay" and, contrary to plaintiff's contention, constituted a "grievance" within the definition of Article XV of the collective bargaining agreement. That Article prescribes the procedure to be followed, in designated steps, looking toward the adjustment of all grievances arising under the terms of the agreement. And Article XVI provides: "In the event that the procedure as set forth in Article XV shall have been followed in respect to any grievance and such grievance shall not thereby have been satisfactorily settled, and if such grievance relates either to the interpretation, application of or compliance with the provisions of this agreement, then such grievance may be appealed to arbitration by either party as hereinafter provided." Other sections of the same article set up the procedure for an "appeal to arbitration" and established a formula for the selection of an Impartial Arbitrator to hear and decide the disputes referred to him. Section 10 provides: "The decision of the Impartial Arbitrator on any matter within his jurisdiction and authority

shall be final and binding upon the Company, the Union and the employees."

. It is plaintiff's position that even if his contested claim for additional wages constitutes a "grievance" within the purview of the bargaining agreement, it is not a proper subject for arbitration because the Pennsylvania Arbitration Act of April 25, 1927, P. L. 381, 5 PS §161 specifically excludes from its operation all contracts for personal services. It must be conceded that the Arbitration Act is inapplicable but the parties to the present contract, between the union, on behalf of its members and the company, in agreeing upon the voluntary arbitration of disputes, are not restricted to the procedure or limitations of that Act. Public policy in Pennsylvania has long favored arbitration of disputes even to the extent of outlawing statutes which attempted to abolish it. *Adinolfi v. Hazlett*, 242 Pa. 25, 28, 88 A. 869. Plaintiff's claim for additional wages is based on rates of pay fixed by the collective bargaining agreement. He cannot be allowed benefits under the favorable provisions of the agreement and refuse to be bound by the terms which are to his disadvantage. *Prentice Unemployment Comp. Case,* supra; *Jablonsky Unemployment Compensation Case,* 168 Pa. Superior Ct. 511, 79 A. 2d 272. Claimant is bound by the limitations imposed by the provisions of the contract. *Miller v. Johnstown Traction Co.,* 167 Pa. Superior Ct. 421, 427, 74 A. 2d 508.

To nullify the agreement in this case would amount to the denial of the Constitutional right of contracting for the arbitration of grievances relating to a lawful subject which does not involve any question of public policy. Clearly the answer to plaintiff's contention is that the 1927 Act did not abrogate common law arbitration; the remedy provided by that Act is cumulative

merely and not exclusive. *Rosenbaum et al. v. Drucker et al.,* 346 Pa. 434, 31 A. 2d 117; *Sukonik v. Shapiro,* 333 Pa. 289, 5 A. 2d 108; *Isaac et al. v. D. & C. Mut. F. Ins. Co.,* 301 Pa. 351, 152 A. 95; *Reading Tube Corp. v. Steel Wrkrs. Fed.,* 173 Pa. Superior Ct. 274, 98 A. 2d 472; *Jt. Bd. Waist & Drmkrs' Union v. Rosinsky,* 173 Pa. Superior Ct. 303, 98 A. 2d 447.

As to common law arbitration it was recognized in the court below that if parties to an executory contract agree that any dispute arising under the contract shall be determined by an individual *named* in the agreement, whose decision shall be final, no action at law will lie for a breach of the agreement. *Monongahela Navigation Company v. Fenlon,* 4 W. & S. 205. But the court held that arbitration was not enforcible at common law in this instance because no *particular* person was chosen as arbitrator. In so holding the principle of *Yost v. Insurance Co.,* 179 Pa. 381, 36 A. 317 to this effect was considered controlling: ". . . where an agreement to arbitrate does not provide for submitting matters in dispute to any particular person or tribunal named, but to one or more persons to be eventually chosen by the parties, it is revocable by either party." The provisions of the present contract do not bring it within the *Yost* case. Section 5 of Article XVI of the collective bargaining agreement, prescribing the successive steps in the arbitration procedure, provides: "The Company and the Union have agreed upon four (4) impartial arbitrators. The names of such arbitrators will be set forth in a letter from the Company to the Union." It thus appears that four arbitrators have been *named,* one of whom by section 6, is required to be chosen by the parties as the Impartial Arbitrator whose decision shall be final. Section 7 contemplates the possibility of the inability

of the parties amicably to comply with section 6 by providing: "In the event that the parties are unable to agree upon the selection of an arbitrator from such list, an arbitrator shall be selected therefrom by lot who shall thereupon be appointed the impartial arbitrator of the dispute in question." Thus, unlike in the *Yost* case where the selection of an arbitrator was left entirely to the future, the Impartial Arbitrator who is to decide the present dispute, is one of four who have been *named* by the parties and the agreement sets up the *formula* for his selection from the group of four so named. One of a number of named persons selected by the operation of a formula embodied in the contract, has the same status as an Impartial Arbitrator agreed upon in advance and named by the parties as such in their contract. Cf. *Sukonik v. Shapiro*, 333 Pa. 289, 5 A. 2d 108. In the circumstances the maxim *Id certum est quod certum reddi potest* should have application. Where the parties by contract contemplate the settlement of disputes by arbitration every reasonable intendment will be made in favor of their agreement. *Curran v. Philadelphia*, 264 Pa. 111, 115, 107 A. 636.

Section 12 of Article XVI of the collective bargaining agreement as related to arbitration in this case provides that ". . . no award . . . shall in any case be retroactive prior to the date on which the grievance was submitted . . ." i.e., in accordance with the procedure of Article XV. In an action in assumpsit the only bar is the Statute of Limitations. Manifestly an action in assumpsit in derogation of the contract would be to the plaintiff's advantage. In our view he is bound by his contract both in the method of prosecuting his claim and as to the period over which he in any event may be entitled to additional compensation.

Order reversed and proceedings stayed pending common law arbitration of plaintiff's grievance as to the rate of pay to which he was entitled.