## Philadelphia Transportation Co. v. Transport Workers Union of Philadelphia, Local No. 234

*Ballard, Spahr, Andrews & Ingersoll,* for plaintiff.
*Nathaniel Budin,* for defendant.

WEINROTT, J., February 5, 1958.—This action in assumpsit was filed by PTC against defendant union and its officers seeking damages for an alleged breach of their agreement by reason of defendants' violation of the "no strike clause". Defendants have filed preliminary objections on two grounds: (1) That the labor agreement provides for the arbitration of this matter; and (2) that the averment of damages in the complaint is not sufficiently specific.

Article II of the agreement between the parties is entitled, "Grievance Procedure; Arbitration". It commences with section 201 which establishes the machinery for the presenting and handling of grievances. Section 202 under this article provides:

"(a) . . . In the event of a disagreement between the Union and the Company as to the interpretation, application or performance of this Agreement, either the Union or the Company may cause such dispute to be referred to a board of arbitration as hereinafter provided. . . ."

Then follows the arbitration procedure and other matters pertaining thereto.

Section 203 merely permits either party to open negotiations to consider changes in the grievance procedure outlined in section 201.

Section 204 is the last item in article II, and it states:

"During the term of this Agreement no employe shall participate in any strike, slow-down, sit-down, stay-in or other stoppage of work."

Section 202 appears to provide for arbitration in two events: (1) Where the disposition of a grievance is not satisfactory to the union, and (2) where there is a disagreement between the parties as to the interpretation, application or performance of the agreement.

Plaintiff argues that the averment in the complaint, that section 204 was violated, must be accepted as admitted for the purpose of these preliminary objections, and that there is nothing in the pleadings to indicate any "disagreement" in that regard.

While the Arbitration Act of April 25, 1927, P. L. 381, specifically excepts contracts for personal services, this act did not abrogate common law arbitration for the remedy provided was cumulative and not exclusive: Povey v. The Midvale Company, 175 Pa. Superior Ct. 395.

The basic issue before this court raised by defendant's preliminary objections is whether the parties, by their contract, contemplated the settlement by arbitration of a breach of section 204, the "no strike clause". The common law rule requires that arbitration agreements be strictly construed and not be extended by implication. The terms of the agreement must be clear and unmistakable to oust the jurisdiction of the courts; for trial by jury cannot be taken away merely by implication: J. S. Cornell & Son, Inc., v. Rosenwald, 339 Pa. 18, 23, and cases therein cited; William Linker Co., Inc., v. Feinberg, 360 Pa. 601. However, we must further bear in mind that where the parties contemplate the settlement of disputes by arbitration, every reasonable intendment must be made in favor of their agreement: Povey v. The Midvale Co., supra.

The answer to the issue lies in whether the violation of the "no strike clause" is a disagreement between the parties as to the interpretation, application or performance of the agreement.

Where the language in the collective bargaining agreement reads: "All complaints or grievances shall be settled in accordance with the full procedure outlined in this agreement," it was held that it was not intended by the parties to encompass the breach of a

"no strike clause" in the collective bargaining agreement even though the quoted portion was within the same paragraph: Markel Electric Products, Inc., v. United Electrical, Radio and Machine Workers of America, U. E., 202 F. 2d 435; International Union United Furniture Workers of America v. Colonial Hardwood Flooring Co., Inc., 168 F. 2d 33.

Defendants rely upon the case of Signal-Stat Corp. v. Local 475, United Electrical, Radio and Machine Workers of America (UE), 235 F. 2d 298, in support of their position. The clause in the latter case stated: "All disputes, grievances or differences that may arise between the parties . . ." shall follow the grievance procedure and if no satisfactory settlement, shall be immediately submitted for arbitration. This clause numbered 18 followed immediately the no strike provision which read:

"17. During the term of this agreement there shall be no strikes, stoppages or lockouts for any cause or reason whatsoever, but work shall proceed and continue without interruption pending settlement through the grievance procedure and/or arbitration as hereinafter provided."

The provisions of this agreement are so enmeshed as to permit of no other construction. Contrary to the clauses here involved, the no strike provision there was specifically and expressly limited within itself to the arbitration procedure.

On the basis of these provisions the court held that the employer's claim for damages for breach of a no strike clause must be submitted to arbitration under the United States Arbitration Act of July 30, 1947, 61 Stat. 669, 9 U. S. C. §§1 to 3. While it is significant to note that the court distinguished the Markel case, supra, on the basis of the difference of language used, we consider the result to also reflect a change of policy rather than the applicable principles of law,

for Judge Frank there stated that prior interpretations of similar arbitration clauses are unduly restrictive and achieve by indirection the same result as the old and now generally rejected judicial aversion to enforcing arbitration agreements: Signal-Stat Corp. v. Local 475, United Electrical, Radio and Machine Workers of America (UE), supra, at page 301.

Nevertheless, despite our willingness to adopt an enlightened interpretation in the context of modern labor practice and to foster arbitration, the agreement of the parties dictates a contrary result. It cannot be said that the failure or refusal to perform on the part of either party a specific and segregated provision of the collective bargaining agreement is something within the spirit or capacity of arbitration under this agreement. Such a failure or refusal to perform is not a difference or disagreement as to the interpretation, application or performance of the agreement, but it is merely a direct violation, breach or failure to comply with the same. There is not available to the employer, in this instance, specific performance of the agreement, assuming the verity of the allegations in the complaint, so it must resort to the judicial tribunal for a determination first as to whether there has been a breach of the agreement in the vein charged and, secondly, the extent of the damages, if any, flowing therefrom.

We hypothesize arguendo that if the employer were to violate a clear mandate of the agreement such as a refusal or failure to pay an agreed rate or to perform certain other clear provisions of the agreement, the remedy could not be said to exist solely by way of arbitration for there is no dispute, difference or disagreement under such circumstances. This analogy, we believe, to be in complete accord with the position of the employer in this case.

We are constrained to rule, therefore, that the arbitration clause set forth in section 202 of the collective bargaining agreement between the parties is inapplicable to the proceedings now before this court.

Considering next the objection that the complaint is not sufficiently specific because it fails to aver with sufficient particularity the items of damage sustained by plaintiff, we refer to Pa. R. C. P. 1019(a):

"The material facts on which a cause of action or defense is based shall be stated in a concise and summary form."

Only special damage is required to be specifically stated. It would seem, therefore, that the requirement of the rule is met and the damages are so stated when they reasonably advise defendants of the nature thereof. The purpose of the rules is to avoid arbitrary and technical requirements and to limit the pleadings to a concise statement of the cause of action. Particularly appropriate here, even though we are here concerned with general damages, is the comment of Judge Flood with respect to the averment of special damages:

Nowadays without expanded discovery procedure, we should not delay the litigation by requiring amended pleadings when it is doubtful what is sought is basic fact or evidence. Rather we should remand defendant to discovery proceedings when the specific items of special damage which plaintiff seeks to recover are pointed out in his pleadings even though these items are not themselves further itemized." See Goodrich-Amram Civ. Pract., sec. 1019(f)-2, p. 53— 1958 Supp. Binder 1.

Applying these principles, we believe that defendants are adequately apprised of the nature of the damages, and that if a more detailed statement is required, this could be obtained by a discovery process.

Moreover, the extent of the damages still must be proven at the time of trial.

In view of the foregoing, we enter the following

*Order*

And now, to wit, February 5, 1958, defendants' preliminary objections nos. 1 to 5 are dismissed with leave to defendants to file an answer within 20 days from date hereof.